**STATE of Minnesota, Respondent,**

v.

**Thomas Edward UTTER, Jr., Appellant.**

**No. A08–1667.**

Court of Appeals of Minnesota.

Sept. 15, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Janelle P. Kendall, Stearns County Attorney, Joshua J. Kannegieter, Assistant County Attorney, St. Cloud, MN, for respondent.

Marie L. Wolf, Interim Chief Appellate Public Defender, St. Paul, MN, for appellant.

Considered and decided by LARKIN, Presiding Judge; ROSS, Judge; and SCHELLHAS, Judge.

## OPINION

SCHELLHAS, Judge.

This appeal arises from the criminal conviction of appellant, who argues that the district court committed reversible error in admitting evidence of his unspecified prior conviction for impeachment purposes. Because the district court erred in admitting evidence of appellant's unspecified prior conviction for impeachment purposes under Minn. R. Evid. 609(a)(1), and this error was not harmless, we reverse and remand.

## FACTS

In April 2005, L.S. received a call from appellant Thomas Edward Utter, Jr., who asked L.S. to meet him at a certain home-improvement store so that appellant could tell him a secret. L.S. met appellant at the store, and appellant asked L.S. whether L.S.'s wife was about to "have another man" and whether L.S. "was about to let her or what." L.S. subsequently realized that his wife was involved in a sexual relationship with appellant. L.S. testified that appellant made "a lot of phone calls," sent flowers, and sent letters. When L.S. answered appellant's phone calls, appellant would speak with L.S., then ask for L.S.'s wife, and L.S. would "put her through." By March 2007, L.S. had phone contact with appellant approximately 100 times and L.S. obtained a harassment restraining order prohibiting appellant from having any contact with L.S., including telephone contact.

On April 5, 2007, L.S. received a call from a pay phone. The phone conversation lasted about twenty minutes, during which the caller called L.S. an "old man" and a "loser." L.S. believed the caller was appellant and told him that he had a restraining order in place, but the caller replied that it would not stop him. After the phone call, L.S. contacted the police, who learned that the pay phone was located at a convenience store approximately two blocks from appellant's house. Respondent State of Minnesota charged appellant with violating a harassment restraining order.

Midway through appellant's trial, the prosecution informed the district court and appellant that if appellant testified at trial, it intended to impeach appellant with his May 20, 2005 conviction of violating an order for protection. Appellant objected to the admission of his prior conviction on the ground that it was prejudicial to him. The district court stated:

> I do have some concern about telling the jury that [appellant's conviction] was for an order for protection violation simply because this is a charge of harassment restraining order violation.... [I]t's not exactly the same thing, obviously, but it's very similar, and I think there is some concern that the jury might believe he is guilty of that once he might be guilty of it again.

I will allow the state to impeach [appellant] simply with the fact that he has a felony conviction dated May 20, 2005.

The trial resumed and, on direct examination, appellant acknowledged having a relationship with L.S.'s wife and testified that in April of 2007, the relationship consisted of "pretty much just conversations over the phone." Appellant also acknowledged having received the harassment restraining order. On cross-examination, appellant denied making approximately 100 calls to L.S.'s cell phone and denied making any calls to L.S.'s cell phone in 2007. On direct examination, appellant answered his counsel's questions about his prior conviction.

DEFENSE COUNSEL: You do have a prior conviction from 2005, is that fair to say?

APPELLANT: Yes.

DEFENSE COUNSEL: All right. That—did that involve [L.S.] or anybody in his family?

APPELLANT: No.

During cross-examination, the prosecution clarified that the 2005 conviction was a felony conviction.

The jury returned a guilty verdict, and the district court sentenced appellant to 18 months' imprisonment, stayed, placed appellant on probation for five years, and ordered appellant to serve 90 days in jail and pay a $2,500 fine. This appeal follows.

## ISSUE

Does a district court err when it admits evidence of a defendant's unspecified prior felony conviction for impeachment purposes under Minn. R. Evid. 609(a)(1)?

## ANALYSIS

■ We review a district court's ruling on the admissibility of prior convictions for purposes of impeachment under a "clear abuse of discretion standard." *State v. Swanson*, 707 N.W.2d 645, 654 (Minn. 2006). Under Minn. R. Evid. 609(a)(1), for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect. District courts have great discretion in determining what convictions are admissible under the balancing test of rule 609(a)(1). Minn. R. Evid. 609(a)(1); *State v. Gassler*, 505 N.W.2d 62, 67 (Minn.1993).

■ "[W]hen a witness is the defendant in a criminal proceeding, cross-examination as to the witness's prior convictions may ordinarily extend only to the fact of conviction, the nature of the offense, and the identity of the defendant." *State v. Griese*, 565 N.W.2d 419, 426 (Minn.1997). The purpose of admitting evidence about convictions is to assist the jury in assessing the credibility of the defendant. *Swanson*, 707 N.W.2d at 655. "[E]vidence of prior convictions generally has some impeachment value because it allows the jury to see the whole person and thus to judge better the truth of the witness's testimony." *State v. Davis*, 735 N.W.2d 674, 680 (Minn.2007) (quotation omitted). To determine if the probative value outweighs the prejudicial effect, we examine five factors:

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the crime to impeach), (4) the importance of defendant's prior tes-

timony, and (5) the centrality of the credibility issue.

*Swanson,* 707 N.W.2d at 654 (quoting *State v. Jones,* 271 N.W.2d 534, 538 (Minn. 1978)). "[A] district court should demonstrate on the record that it has considered and weighed the *Jones* factors," *id.* at 655, and "it is error for a district court to fail to make a record of its consideration of the *Jones* factors, though the error is harmless if it is nonetheless clear that it was not an abuse of discretion to admit evidence of the convictions," *Davis,* 735 N.W.2d at 680. When a district court fails to make a record of its consideration of the *Jones* factors, we review the factors as applied to the matter before us. *Swanson,* 707 N.W.2d at 655.

 Here, the district court did not consider the *Jones* factors on the record but did express concern about the similarity of appellant's prior conviction to the charged offense. In an attempt to mitigate the prejudicial effect of the conviction, the court allowed only the admission of the fact of appellant's May 20, 2005 felony conviction. The question before us on appeal is whether the probative value of admitting evidence of an unspecified prior felony conviction outweighs its prejudicial effect so that the evidence is admissible under rule 609(a)(1). We answer this question in the negative.

Minnesota appellate courts have not addressed the issue of whether evidence of an unspecified prior conviction is admissible, and other jurisdictions are split on the issue. Michigan courts have long rejected the use of unspecified prior convictions to impeach defendants. *See, e.g., People v. Van Dorsten,* 409 Mich. 942, 298 N.W.2d 421, 421 (1980) ("It is improper to impeach a defendant by telling the jury only of the existence of unnamed prior felony convictions, without providing the names of the offenses. It is the nature, rather than the fact, of a prior felony conviction which the jury is to use in its evaluation of credibility."); *People v. Garth,* 93 Mich.App. 308, 287 N.W.2d 216, 219 (1979) ("Because many felonious activities have little if any relationship to veracity, a prior felony conviction is not in itself a reliable indication of lack of credibility. Without knowledge of the nature of the felony, the trier of fact has no probative evidence to consider, merely an amorphous suggestion that defendant's past is blameworthy."). But, in a 1990 Illinois case, a concurring judge observed that "Michigan [was] the only state that expressly disallow[ed] impeachment by an unspecified felony," and that Florida, Idaho, Kentucky, Montana, Nebraska, Nevada, New Mexico, Washington, and Wisconsin allowed the "mere fact" of a felony conviction to be admissible, while Alaska, Connecticut, Oregon, and South Dakota considered the issue a matter of the trial court's discretion. *People v. Kunze,* 193 Ill.App.3d 708, 140 Ill.Dec. 648, 550 N.E.2d 284, 301 (1990) (Steigmann, J., specially concurring).

Yet, since 1990, other jurisdictions have followed Michigan's rejection of the use of unspecified prior convictions for impeachment purposes, and, in 1999, the Illinois Supreme Court rejected what it called the "mere fact" rule, reasoning that "it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness' credibility." *People v. Atkinson,* 186 Ill.2d 450, 239 Ill.Dec. 1, 713 N.E.2d 532, 536, (1999). And, in 2000, recognizing that its holding placed it in the minority of jurisdictions, the Court of Special Appeals of Maryland held that impeachment by a defendant's "sanitized" prior felony conviction was reversible error. *Bells v. State,* 134 Md.App. 299, 759 A.2d 1149, 1155 (2000). In considering the admissibility of a "sanitized prior conviction for impeachment purposes," the court said:

Maryland has not squarely faced the issue of whether using a sanitized conviction for impeachment purposes complies with our law and rules. Although a rule permitting a sanitized use of similar convictions has some appeal, we are disinclined to graft such an extension onto the existing rule. Here, the court properly found that, in this case, the use of the prior convictions would in balance be more prejudicial than probative. We do not believe that the sanitized version was any less so.... [W]e hold that the lower court erred in permitting sanitized prior convictions to impeach Bells.

*Id.* at 1152 (footnote omitted).

The admissibility of unspecified prior convictions of a criminal defendant has also been addressed by some federal courts. For example, the Fifth Circuit has discussed a federal district court's rejection of this method of impeachment favorably, noting the federal district court's reasoning that a jury might infer from the withholding of details about a conviction that the conviction was of a similar nature to the charged offense. *United States v. Shaw,* 701 F.2d 367, 385 (5th Cir.1983). And the Seventh Circuit has reasoned that jurors are unlikely to be able to properly evaluate a witness's credibility if they are made aware only of the fact that the witness has been convicted of a felony. *Campbell v. Greer,* 831 F.2d 700, 707 (7th Cir.1987).

In this case, we conclude that the district court abused its discretion in admitting evidence of appellant's unspecified prior conviction. As in *Bells,* the district court expressed concern about the prejudicial effect of appellant's prior conviction of violating an order for protection because of its similarity to the charged offense, at least implying that the court believed that the use of the prior conviction would be more prejudicial than probative. The

court's concern was entirely proper under the third *Jones* factor, which recognizes that the greater the similarity between the prior conviction and the charged offense, the greater the reason for not permitting use of the prior conviction to impeach. *Jones,* 271 N.W.2d at 538. The court's solution substantially reduced the risk of admitting a prior conviction to impeach that is identical or similar to the current conviction, namely that the jury may conclude that because the defendant "did it before, he most likely has done it again." But the court's solution also discarded the measure by which the jury could assess the impeachment value of the prior conviction. The impeachment value of the prior crime varies with the nature of the offense. *See Gordon v. United States,* 383 F.2d 936, 940 (D.C.Cir.1967); *State v. James,* 638 N.W.2d 205, 211 (Minn.App.2002), *review denied* (Minn. Mar. 27, 2002). By shielding the jury from the nature of appellant's prior conviction, the district court allowed the jury to speculate that the prior crime had much greater impeachment value than it may actually have had.

In this case, appellant's credibility was a central issue in the case because his defense was based on the theory that he was not the party who made the phone call to L.S. on April 5, 2007, a defense supported only by appellant's testimony. A district court has "great discretion in determining what prior convictions are admissible under the balancing test of Rule 609(a)(1)." *Gassler,* 505 N.W.2d at 67. But,

[a] sanitized prior conviction is not merely "ill-defined," but totally undefined. A jury [is] completely unable to assess what, if any, impact a "prior felony conviction" has upon a witness's veracity. The fact finder is able only to speculate about the prior conviction, therefore jeopardizing the purpose of [the rule], which seeks to "prevent a

jury from convicting a defendant based on his past criminal record, or because the jury thinks the defendant is a bad person."

*Bells*, 759 A.2d at 1154–55 (quoting *Jackson v. State*, 340 Md. 705, 668 A.2d 8, 13 (1995)). We hold that the district court's admission of appellant's unspecified prior felony conviction for impeachment purposes was error. We recognize that our holding places Minnesota in the minority of jurisdictions, but we conclude that to allow the admission of unspecified prior convictions would render meaningless our long line of cases emphasizing the importance of admitting only those convictions that assist the factfinder in measuring a witness's credibility and veracity. *See, e.g., Swanson*, 707 N.W.2d at 655.

▮ Having concluded that the district court erred in admitting evidence of appellant's unspecified prior conviction, we next consider whether the error was harmless. The erroneous admission of evidence is "harmless if there is no 'reasonable possibility that the wrongfully admitted evidence significantly affected the verdict.' " *State v. Robinson*, 718 N.W.2d 400, 407 (Minn.2006) (quoting *State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994)); *see also State v. Vanhouse*, 634 N.W.2d 715, 721 (Minn.App.2001) (applying the *Post* standard to the erroneous admission of a conviction for impeachment), *review denied* (Minn. Dec. 11, 2001). The Minnesota Supreme Court has recognized that Minnesota caselaw is inconsistent about who should bear the burden of showing that the district court's error was harmless. *State v. Shoen*, 598 N.W.2d 370, 377–78 n. 2 (Minn. 1999). We also note that the supreme court has not yet "resolve[d] any discord in our prior case law," only noting "the apparent inconsistency in our previous cases and draw[ing] the attention of practitioners to it." *Id.* Similarly, for reasons stated below, we do not attempt to resolve any discord in prior case law in this opinion.

Here, as previously noted, the jury's determination of appellant's credibility was critical to the verdict in this case. The district court's admission of appellant's unspecified prior felony conviction compounded the prejudice against him because the jury's ability to make credibility determinations depends on the nature of a conviction. The admission of the unspecified prior conviction raised the possibility that the jury might assume the worst.

We cannot conclude that there is no reasonable possibility that the wrongfully admitted evidence significantly affected the verdict. We hold that, regardless of who should bear the burden of showing that the district court's error was harmless, the error in this case is reversible error. We therefore reverse appellant's conviction and remand for a new trial.

We further note that, in addition to instructing the jury on how to evaluate impeachment evidence, the district court issued instructions to the jury similar to 10 *Minnesota Practice*, CRIMJIG 3.16 (2006), which pertains to *Spreigl* evidence. The district court instructed the jury that:

> The state has produced evidence of an occurrence on May 20th, 2005, at Stearns County. It was admitted for the limited purpose of assisting you in determining whether the defendant committed those acts with which the defendant is charged in the complaint. The defendant is not being tried for and may not be convicted of any offense other than the charged offense. You are not to convict the defendant on the basis of any occurrence on May 20, 2005, at Stearns County. To do so might result in unjust double punishment.

We do not doubt that the district court instructed the jury on the use of crimes as both impeachment and *Spreigl* evidence

for the purpose of attempting to mitigate prejudice to appellant. But, although the language of the impeachment and *Spreigl* instructions are somewhat similar, *compare* 10 *Minnesota Practice,* CRIMJIG 3.15 (2006) *with* CRIMJIG 3.16, the reference to unjust double punishment may have led the jury to speculate that the unspecified conviction was similar to, or even identical to, the charged offense. We conclude that the court's instruction likely exacerbated, rather than mitigated, the prejudice against appellant.

## DECISION

Because the district court erred when it admitted evidence of an unspecified prior felony conviction to impeach appellant and the error was not harmless, we reverse and remand for a new trial.

**Reversed and remanded.**